f**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JAMEL UPSON,

                              Plaintiff,

        v.

GERALDINE WILSON, et al.,                              No. 9:18-CV-1149
                                                       (LEK/CFH)

                              Defendants.

_____

**APPEARANCES:**                              **OF COUNSEL:**

Jamel Upson
11-A-1855
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902
Plaintiff pro se

Attorney General for the                      BRIAN W. MATULA, ESQ.
    State of New York                         Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

        Plaintiff pro se Jamel Upson ("Plaintiff"), an inmate who was, at all relevant times,

in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that

Defendants Nurse Geraldine Wilson ("Nurse Wilson"), Nurse Elizabeth White ("Nurse

_____

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

White"),[2] Correction Officer ("C.O.") Shawn Woods, John Doe #1, John Doe #2, and

Nurse Deborah Shipman ("Nurse Shipman")[3]—who at all relevant times were employed

at Upstate Correctional Facility ("Upstate")—violated his constitutional rights arising

under the Eight Amendment.[4]  See Dkt. No. 1 ("Compl.").

Presently pending before the Court is Defendants' motion to dismiss pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FED. R. CIV. P.").  See Dkt. Nos.

22, 38.  Plaintiff opposed the motion.  See Dkt. No. 24.  For the reasons that follow, it is

recommended that the motion be granted in part and denied in part.


## I. Background

### A. Facts

The facts are related herein in the light most favorable to plaintiff as the non-

moving party.  See section II.A. infra.  Plaintiff's allegations stem from the time that he

was confined to a Special Housing Unit ("SHU") at the Upstate Correctional Facility

("Upstate C.F.").[5]  See generally Compl.  Plaintiff previously sustained an abdominal

---

[2] In a status report dated December 16, 2019, Defendants' counsel advised that the individual sued by Plaintiff as "Nurse White" was "Elizabeth White."  See Dkt. No. 26.  The Clerk is respectfully directed to amend the docket to reflect the full name of that defendant.

[3] According to Defendants, Nurse Deborah Shipman was previously known as Nurse Deborah Williamson, see Dkt. No. 9, which is the name utilized by Plaintiff throughout his Complaint.  See generally Compl.

[4] In a letter to Court dated December 23, 2019, Plaintiff indicated that he consented to the dismissal of all claims against Nurse Traverse.  See Dkt. Nos. 29, 30.

[5] Although SHUs exist in all maximum and certain medium security facilities, Upstate is a maximum-security facility comprised exclusively of SHU cells in which inmates are confined for twenty-three hours each day.  See Samuels v. Selsky, No. 01-CV-8235 (AGS), 2002 WL 31040370, at *4 n.11 (S.D.N.Y. Sept. 12, 2002).  Inmates are generally confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  See N.Y. COMP. CODES R. & REGS. tit 7, § 301.

gunshot wound, which has caused him to suffer certain complications, including recurring bowel obstructions.  See id. at 3.[6]  According to Plaintiff, he has been hospitalized on at least three prior occasions while in the custody of DOCCS due to this recurring condition.  See id.

On April 30, 2015, Plaintiff began to experience what he describes as "symptoms of another severe bowel obstruction: [e]xcruciating abdominal pain and cramping, debilitating vomiting, profuse sweating, and dizziness."  Compl. at 3.  At approximately 2:30 P.M., Plaintiff told C.O. Woods that he was experiencing a medical emergency and asked that C.O. Woods summon assistance.  See id.  When Nurse Wilson arrived at Plaintiff's cell about 30 minutes later and he explained his medical history, she allegedly ignored Plaintiff and left.  See id.

At approximately 8:00 P.M., Plaintiff was "taken to Medical" where Nurse Wilson checked his blood pressure, touched his stomach, and "again dismissed his symptoms."  Compl. at 3-4.  Upon returning to his cell, Plaintiff again asked C.O. Woods to summon medical assistance, but he responded that "there was nothing he could do."  Id. at 4.  Thereafter, at approximately 10:00 P.M., Plaintiff asked John Doe #1—a correction officer—to summon aid.  See id.  After a nurse responded, listened to his symptoms, and left without providing any additional assistance, Plaintiff complained to John Doe #1, who also responded that "there was nothing he could do."  Id.

During "med rounds" the following morning, Plaintiff complained to Nurse White, who told him to "'put in for sick call." before leaving.  Compl. at 4.  When Plaintiff

---

[6]  All citations to page numbers refer to the pagination generated by CM/ECF, rather than the page numbers generated by the parties.

complained about the lack of medical treatment to John Doe #2—also a correction

officer—John Doe #2 also responded that "there was nothing he could do."  Id.

    Shortly after 2:00 P.M., Plaintiff "reported to the gallery officer his [medical]

emergency."  Compl. at 4.  The gallery officer then summoned Nurse Shipman, who

took Plaintiff to "Medical" for temporary observation.  Id.  Nurse Shipman returned

Plaintiff to his cell for approximately thirty minutes, but then admitted Plaintiff to the

facility's Infirmary, where she determined that Plaintiff required emergency

hospitalization.  See id.

    Although it took several hours, Plaintiff was ultimately transported to a nearby

hospital for treatment  See Compl. at 4-5.  At that point, however, "his condition and

symptoms had worsened to the point that backed up waste had to be pumped out, he

required Dilaudid for excruciating pain, and he had to have a nasogastric tube inserted

and remain in place for five days."  Id. at 5.

    Following the incident, Plaintiff "timely filed and appealed through all levels a

grievance . . . , which was assigned Grievance No. UST-56073-15."  Compl. at 6; see

also Dkt. No. 22-3 (Inmate Grievance dated May 7, 2015).  On January 5, 2016, the

Central Office Review Committee ("CORC") issued a decision denying the grievance.

See Compl. at 6; see also Dkt. No. 22-5 (CORC determination dated January 5, 2016).


### B.  Procedural History

    On September 24, 2018, Plaintiff commenced this action by filing a pro se civil

rights complaint.  See Compl.  In a Decision and Order filed on December 10, 2018 (the

"December Order"), the Court conducted an initial review of the Complaint, in

accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A, and directed

Defendants to respond to Plaintiff's Eighth Amendment medical indifference claims.

<u>See</u> Dkt. No. 6.  Defendants were also directed to provide the full identities of certain

Defendants in accordance with the Second Circuit's decision in <u>Valentin v. Dinkins</u>, 121

F.3d 72 (1997).

By letter dated February 7, 2019, and provided to the Court on February 27,

2019, Defendants' counsel provided the identity of John Doe #2, but indicated that he

was unable ascertain the identity of John Doe #1 based upon the limited factual

allegations contained in the Complaint.  <u>See</u> Dkt. No. 9.  On March 1, 2019, Senior

District Court Judge Lawrence E. Kahn directed Plaintiff to file a proposed Amended

Complaint by April 1, 2019, cautioning that if Plaintiff failed to do so, John Doe #1 and

John Doe #2 would be "dismissed from this action without prejudice, without further

order of the Court."  Dkt. No. 10.  Although he was granted an extension of time to file a

proposed amended pleading, Plaintiff did not ultimately do so.  <u>See</u> Dkt. Nos. 12, 14.

In lieu of filing an answer, Defendants have now moved, pursuant to Fed. R. Civ.

P. 12(b)(6) to dismiss the Complaint.  <u>See</u> Dkt. Nos. 22, 38.  Plaintiff has generally

responded in opposition to the motion.  <u>See</u> Dkt. No. 24; <u>see also</u> Dkt. No. 41 (granting

Plaintiff an opportunity to submit additional, limited briefing regarding Nurse White).

## II.  Discussion[7]

---

[7]  All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have
been provided to Plaintiff.

In his Complaint, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. See generally Compl. Defendants argue that the Complaint must be dismissed in its entirety because Plaintiff: (1) failed to exhaust his administrative remedies as to certain Defendants prior to commencing this action; (2) failed to plausibly allege a deliberate indifference claim; and (3) failed to specifically identify certain "John Doe" defendants as directed by the Court.[8] See Dkt. Nos. 22, 38. Plaintiff generally opposes the motion. See Dkt. No. 24.

### A.   Legal Standard for Motions Pursuant to FED. R. CIV. P. 12(b)(6)

Under FED. R. CIV. P. 12(b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted." When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009)) (internal quotation marks omitted). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

---

[8] Defendants also argue that any claim to correct "any false, misleading, inaccurate, or incomplete entries in Plaintiff's medical and other institutional records" must be dismissed. See Dkt. No. 22-1 at 11-12 (citing Compl. at 7). Even assuming that such a cause of action exists, that claim did not survive the December Order, which "limited" the claims against Defendants to an Eighth Amendment medical indifference claim. See Dkt. No. 6.

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal quotation marks and citation omitted). Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a

7

court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted).

### B.   Exhaustion

Defendants C.O. Woods and Nurse Shipman argue that Plaintiff failed to exhaust his administrative remedies prior to commencement and, as a result, the action must be dismissed against them.  See Dkt. No. 22-1 at 8-9, 10-11.  Although Plaintiff generally opposed Defendants' motion to dismiss, he did not specifically respond to this argument.  See generally Dkt. No. 24.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration.  See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  The exhaustion requirement applies "'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'"  Cucchiara v. Dumont, No. 18-CV-0182 (GLS/CFH), 2019 WL 2516605, at *4 (N.D.N.Y. Apr. 26, 2019) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)).  Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as money damages.  See Porter, 534 U.S. at 524.  "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or

8

she is incarcerated." Cuadrado v. Brueault, No. 9:14-CV-1293 (DNH/CFH), 2015 WL

1606178, at *3 (N.D.N.Y. Apr. 8, 2015); see Jones v. Bock, 549 U.S. 199, 218 (2007).

Although the Supreme Court has deemed exhaustion mandatory, the Second

Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467

F.3d 170, 175 (2d Cir. 2006) (internal quotation marks and citation omitted). Previously,

courts in this District followed the three-part test established in Hemphill v. New York,

380 F.3d 680, 686 (2d Cir. 2004). Under Hemphill, a plaintiff's failure to exhaust could

be excused if a plaintiff established that his or her failure to exhaust was justified by

"special circumstances." Id. In Ross v. Blake, however, the Supreme Court held that

"[c]ourts may not engraft an unwritten 'special circumstances' exception onto the

PLRA's exhaustion requirement." Ross v. Blake, ____ U.S. ____, 136 S. Ct. 1850,

1862 (2016). Thus, the "special circumstances" exception promulgated in Hemphill is

no longer consistent with the statutory requirements of the PLRA. See Williams v.

Correction Officer Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

Even though the Supreme Court's decision in Ross eliminates Hemphill's

"special circumstances" exception, a district court must still consider the PLRA's "textual

exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. Under this exception,

courts must determine whether administrative remedies were "available" to a prisoner.

Id. The Supreme Court identified three circumstances where administrative remedies

may be unavailable to a prisoner. First, "an administrative procedure is unavailable

when (despite what regulations or guidance materials may promise) it operates as a

simple dead end—with officers unable or consistently unwilling to provide any relief to

aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738

(2001)).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  Id.  Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Id. at 1860.

Exhaustion of administrative remedies is an affirmative defense which defendants must raise.  See Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999). Once raised, the defendants bear the burden of proving that administrative remedies have not been exhausted.  See Howard v. Goord, 98-CV-7471 (FB), 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999) (citations omitted).  The party opposing the affirmative defense "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined."  Id.  In most cases, the "inquiry is fact specific and would not be appropriate for resolution on a motion to dismiss."  Shoults v. Kooi, No. 14-CV-1184 (GLS/DJS), 2016 WL 770060, at *2-3 (N.D.N.Y. Jan. 28, 2016), report and recommendation adopted, No. 14-CV-1184 (GLS/DJS), 2016 WL 796083 (N.D.N.Y. Feb. 23, 2016).  "However, if it is apparent from the pleadings themselves, and the documents attached thereto or incorporated therein, that the plaintiff has failed to exhaust his administrative remedies, then the complaint may be dismissed pursuant to Rule 12(b)(6)."  Paschal-Barros v. Kenny, No. 18-CV-1870 (VLB), 2019 WL 2720739, at *3 (D. Conn. June 28, 2019).

DOCCS has a well-established three-step administrative procedure for inmate grievances known as the Inmate Grievance Program ("IGP").  See N.Y. COMP. CODES R. & REGS. (7 N.Y.C.R.R.) § 701.5.  First, the inmate must file a complaint with an IGP clerk within 21 calendar days of the alleged incident.  See id. at § 701.5(a)(1).  An IGP

representative has 16 calendar days to informally resolve the issue. See id. at §

701.5(b)(1). If no informal resolution occurs, the Inmate Grievance Review Committee

("IGRC") must hold a hearing within 16 calendar days of receipt of the grievance and

must issue a written decision within two working days after the conclusion of the

hearing. See id. at § 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the

inmate, the inmate may appeal the IGRC's determination to the facility superintendent

within seven calendar days of receipt of the determination. See id. at § 701.5(c)(1). If

the superintendent's determination is unfavorable to the inmate, the inmate may appeal

to CORC within seven calendar days after receipt of the superintendent's determination.

See id. at § 701.5(d)(i). CORC must "review each appeal, render a decision on the

grievance, and transmit its decision to the facility, with reasons stated, for the [inmate],

the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar

days from the time the appeal was received." Id. at § 701.5(d)(3)(ii). "Ordinarily, absent

the finding of a basis to excuse non-compliance with this prescribed process, only upon

exhaustion of these three levels of review may a prisoner seek relief pursuant to section

1983 in a federal court." Murray v. Goord, 668 F. Supp. 2d 344, 355-56 (N.D.N.Y.

2009).

    As a threshold issue, the Court must address Defendants' attachment of several

documents outside the pleadings in support of their motion to dismiss. See Dkt. No. 22-

3 (grievance), Dkt. No. 22-4 (appeal), Dkt. No. 22-5 (CORC determination). Under FED.

R. CIV. P. 12(b), the "complaint includes . . .any statements or documents incorporated

into it by reference." Paulemon v. Tobin, 30 F.3d 307, 308-09 (2d Cir. 1994); see FED.

R. CIV. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a

part thereof for all purposes."). Even where a document is not incorporated by reference, however, the district court "may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (noting that a court may properly consider "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit").

Here, the Complaint states that Plaintiff "timely filed and appealed through all levels a grievance complaining about these incidents, which was assigned Grievance No. UST-56073-15" and that he was ultimately "provided with a copy of the CORC denial of that grievance on January 5, 2016[.]" Compl. at 6. In support of their motion, Defendants have submitted that grievance, along with Plaintiff's appeal to the CORC and the CORC denial. See Dkt. Nos. 22-3, 22-4, 22-5. Although these documents were not annexed to the Complaint, under the circumstances of this case, the undersigned will consider the submissions inasmuch as Plaintiff specifically relied upon the outcome of the IGP, rendering these documents integral to the Complaint.[9] See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991); see also Savage v. OFC. Michael Acquino, No. 13-CV-6376 (JWF), 2016 WL 5793422, at *2 n.4 (W.D.N.Y. Sept. 30, 2016).

Turning to the merits, the Second Circuit has compared the PLRA exhaustion requirement to "the rules of notice pleading," because a grievance "must contain

---

[9] Indeed, Plaintiff asserts in the Complaint, which was filed on September 24, 2018, that "[a]lthough this incident occurred on May 1, 2015, the statute of limitations was tolled until Plaintiff received a copy of the CORC decision on his grievance about it January 5, 2016." Compl. at 3.

allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it." Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004), overruled on other grounds by Woodford v. Ngo, 548 U.S. 81 (2006). Although it is "appropriate to afford pro se inmates a liberal grievance pleading standard, the grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006); see also Singh v. Lynch, 460 F. App'x 45, 47 (2d Cir. 2012) (summary order).

The IGP regulations provide that a grievance submitted by an inmate should "contain a concise, specific description of the problem and the action requested[.]" 7 N.Y.C.R.R. §§ 701.5(a)(2) (emphasis added). The Second Circuit has determined, however, that the "IGP regulations do not state that a prisoner's grievance must name the responsible party." Espinal v. Goord, 558 F.3d 119, 126 (2d Cir. 2009). "At bottom, the question is 'whether plaintiff's grievance sufficiently alerted prison authorities that he was alleging some wrongdoing.'" Peters v. Huttel, 15-CV-9274 (NSR), 2019 WL 6619602, at *9 (S.D.N.Y. Dec. 5, 2019) (quoting Turner v. Goord, 376 F. Supp. 2d 321, 325 (W.D.N.Y. 2005)); see Johnson, 380 F.3d at 697 (noting that a prisoner must allege facts sufficient to alert corrections officials "to the nature of the claim," and "provide enough information about the conduct" at issue "to allow prison officials to take appropriate responsive measures."); see also Espinal, 558 F.3d at 126 ("The point is that prison officials ha[ve] the necessary information to investigate the complaints and the opportunity to learn which officers were involved in the alleged incident"). "All the grievance need do is object intelligibly to some asserted shortcoming." Brownell, 446 F.3d at 310.

Even affording Plaintiff the appropriate lenity as a pro se litigant, nothing in the grievance could have reasonably led prison authorities to conclude that Plaintiff was making any allegations with respect to C.O. Woods and Nurse Shipman.  See Dkt. No. 22-3.  The primary thrust of Plaintiff's grievance was the lack of medical care that he received for "[e]xcruciating abdominal pain and cramping, debilitating vomiting, profuse sweating, and dizziness" from Nurse Wilson, Nurse White, and other members of the nursing staff at Upstate that he could not identify at the time he filed the grievance.  See generally Compl; Dkt. Nos. 22-3, 22-4, 22-5.  In the grievance, Plaintiff states that after he began to experience "serve abdominal pains and excessive vomiting" on April 30, 2015, he informed C.O. Woods of his symptoms, who then summoned medical assistance.  Dkt. No. 22-3 at 1.  In addition, Plaintiff states that it was Nurse Shipman who "actually listen[ed] to me and sen[t] me to the infirmary."  Id. at 2.  Plaintiff does not otherwise mention C.O. Woods or Nurse Shipman in his grievance and concludes by asking prison officials for "[i]nvestigation and remedial action . . . due to being denied and delayed med[ical] attention."  Id.

In denying the grievance, the Superintendent stated:

> This grievance was investigated by N. Smith, N.A. and completed by chart/FHS1 review, grievant, nurse interviews and statements.
>
> Grievant was evaluated by several different nurses and found to have no signs of a bowel obstruction until exam on 05/01/15.  He was then admitted to the facility infirmary and later to Alice Hyde Medical Center for his medical concerns.

Dkt. No. 22-4 at 1.  In the appeal that followed the Superintendent's denial, Plaintiff criticized the decision as a "false one."  Dkt. No. 22-4 at 2.  While the appeal statement mentions that C.O. Woods was a witness to his alleged maltreatment—and Plaintiff

implores prison officials to "ask [C.O.] Wood if I did anything to make Nurse Wilson yell"—Plaintiff does not set forth a "specific description of the problem" as to C.O. Woods. Id. at 4. The same is true for Nurse Shipman; whom Plaintiff praises and states "[i]t was only due to Nurse [Shipman] making the call to put me in the infirmary that I was able to get to the outside hospital. She was the only nurse that took me seriously and it took me 24 [hours] to get to her." Dkt. No. 22-4 at 3; see also id. ("The other nurses besides Nurse [Shipman] disregarded what I said . . . . [a]nd they should be held accountable."). The CORC denied the grievance in January 2016. See Dkt. No. 22-5.

"Although it is true that 'a claim may be exhausted when it is closely related to, but not explicitly mentioned in an exhausted grievance,'" Barnes v. Annucci, No. 15-CV-0777 (GLS/DEP), 2019 WL 1387460, at *10 (N.D.N.Y. March 12, 2019), it is equally true that the mere fact that a plaintiff filed and fully appealed *some* grievance "'does not automatically mean that [the inmate] can now sue anyone who was in any way connected with the events giving rise to that grievance.'" Colon v. New York State Dep't of Corr. & Cmty. Supervision, No. 15-CV-7432 (NSR), 2019 WL 5294935, at *7 (S.D.N.Y. Oct. 17, 2019). Plaintiff's grievance was clearly sufficient to put prison officials on notice of his claim for "[d]eni[al] of medical care" as to Nurse Wilson, Nurse White, and other members of the nursing staff. See Dkt. No. 22-4 at 1. What the grievance did not do, however, was contain the requisite "specific description of the problem" as to C.O. Woods and Nurse Shipman. See 7 N.Y.C.R.R. §§ 701.5(a)(2).

This determination is consistent with conclusion reached recently by the undersigned in Hawthorne v. Nurse Sturgeon, No. 9:17-CV-438 (LEK/CFH), 2018 WL

4290458 (Aug. 8, 2018), report and recommendation adopted sub nom. Hawthorne v. Sturgeon, No. 9:17-CV-0438 (LEK/CFH), 2018 WL 4288624 (N.D.N.Y. Sept. 7, 2018). In Hawthorne, the undersigned concluded that because the plaintiff failed to include any conduct attributable to a nurse, the grievance was not sufficient to put prison officials on notice of a deliberate indifference claim against that party.  See id. at *6 (citing Messa v. Woods, No. 9:07-CV-306 (DNH/DEP), 2009 WL 3076120, at *6 (N.D.N.Y. Sept. 23, 2009) (noting that a grievance "must place defendants on notice of what, substantively, is claimed in order to permit a proper investigation."); see Hayes v. Dahlke, No. 9:16-CV-1368 (TJM/CFH), 2018 WL 7356343, at *19 (Dec. 11, 2018), report and recommendation adopted, No. 9:16-CV-1368 (TJM/CFH), 2019 WL 689234 (N.D.N.Y. Feb. 19, 2019).  Accordingly, it is recommended that Defendants' motion on this ground be granted as to C.O. Woods and Nurse Shipman.

### C.    Deliberate Indifference to Serious Medical Needs

The Eighth Amendment forbids the infliction of "cruel and unusual punishments" on those convicted of crimes, "which includes punishments that involve the unnecessary and wanton infliction of pain."  U.S. CONST. amend. VIII; see Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976).  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The deliberate indifference standard consists of both an objective and subjective component.  Hathaway, 37 F.3d at 66.  The objective component requires the

plaintiff to demonstrate that his alleged medical need is "sufficiently serious." Id. The subjective component requires a showing that the defendant has acted with a "sufficiently culpable state of mind." Id.

As a threshold matter, for a prisoner to state a cognizable claim of deliberate indifference, he must make a showing of serious illness or injury. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (citation omitted). A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, 37 F.3d at 66 (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). As there is no bright-line rule to determine whether a condition is sufficiently serious, the Second Circuit has identified several factors that are highly relevant to the inquiry, including: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003) (citing Chance, 143 F.3d at 702 (internal citation omitted)).

Defendants do not seriously dispute that Plaintiff has adequately pleaded the objective element of a deliberate indifference claim. See generally Dkt. No. 22. Instead, the thrust of their argument is that Plaintiff failed to plausibly allege that Nurse Wilson and Nurse White acted with a sufficiently culpable state of mind. See id.

A prison official acts with a sufficiently culpable state of mind when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511

U.S. 825, 837 (1994).  "Deliberate indifference is a mental state equivalent to subjective recklessness" which "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."  Id. (quotation marks omitted).  Further, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment claim."  Chance, 143 F.3d at 703.  Therefore, any "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of intervention, are not adequate grounds for a Section 1983 claim."  Randle v. Alexander, 960 F. Supp. 2d 457, 481 (S.D.N.Y. 2013); see Covington v. Westchester Cty. Jail, No. 96-CV-7551 (SAS), 1998 WL 26190, at *2 n.1 (S.D.N.Y. Jan. 26, 1998) ("Deliberate indifference is properly pleaded by allegations of intentional efforts to delay [a] plaintiff's access to medical care, complete denial of medical treatment, or a reckless or callous indifference to the safety of prisoners.").

Although close, the undersigned concludes that Plaintiff has plausibly alleged that Nurse Wilson and Nurse White were "actually aware of a substantial risk that serious harm would result," albeit just barely.  Farmer, 511 U.S. at 837.  Plaintiff alleges that he has a history of bowel obstructions—due to an abdominal gunshot wound—that have required three hospitalizations during the time he has been in the custody of DOCCS; an allegation that plausibly suggests that Defendants were aware of Plaintiff's condition.  See Compl. at 3.  When Plaintiff spoke with Nurse Wilson on the afternoon April 30, 2015, he explained his medical history and symptomology, but she simply

ignored him and left without proving any medical treatment.  See id.  Although Nurse

Wilson later performed a cursory physical examination, she sent him back to his cell

without any further treatment.  See id. at 3-4.  Plaintiff's symptoms worsened overnight,

but when he tried to report his emergency to Nurse White, who has making her "med

run" the following morning, she refused to listen and told him to "put in for sick call."  Id.

at 4.

A fuller record of the decisions made by Nurse Wilson and Nurse White may

demonstrate that Plaintiff's Eighth Amendment claim is nothing more than a

disagreement over the course of medical treatment that he received.  But when his

allegations are construed in the light most favorable to him, the Complaint is sufficient to

plausibly allege the culpable mental state necessary to satisfy the subjective element of

a deliberate indifference claim.  See, e.g., Laster v. Mancini, No. 07-CV- 8265 (DAB),

2013 WL 5405468, at *21 (S.D.N.Y. Sept. 25, 2013) ("Courts have declined to dismiss

deliberate-indifference claims as a matter of law where plaintiffs have alleged a delay in

medical treatment causing substantial pain, even when the injuries alleged were not life-

threatening and the delay was relatively brief."). The question of whether Nurse Wilson

and Nurse White acted with a sufficiently culpable state of mind is better suited for

resolution on a motion for summary judgment, or at trial, based upon a fully developed

record.  Accordingly, it is recommended that Defendants' motion on this ground be

denied as to Nurse Wilson and Nurse White.


### D.  "John Doe" Defendants

Defendants argue that Plaintiff's claims John Doe #1 and John Doe #2 must be dismissed due to Plaintiff's failure to name and serve those two defendants. See Dkt. No. 22-1 at 14-15. Plaintiff did not specifically oppose this argument. See Dkt. No. 24.

It is well settled that a plaintiff's pro se status "does not exempt a [plaintiff] from compliance with relevant rules of procedural and substantive law." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir.1983)). Under the Federal Rules, if a defendant has not been served within 120 days after the complaint is filed, the Court must dismiss the action without prejudice against the unserved defendants or order that service on those defendants be made within a specified time. FED. R. CIV. P. 4(m). However, where the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. See id.; N.D .N.Y. L.R. 4.1(b) ("requir[ing] . . . service of process upon all defendants within sixty (60) days of the filing of the complaint.").

When deciding whether to extend a plaintiff's time for serving defendants, "a district court is afforded ample discretion to weigh the 'overlapping considerations' involved in determining whether good cause exists, and whether an extension may be granted in its absence." Shepherd v. Fischer, No. 9:10-CV-01524 (TJM/DEP), 2015 WL 1246049, at *21 (N.D.N.Y. Feb. 23, 2015) (citing Zapata v. New York, 502 F.3d 192, 197 (2d Cir. 2007)). Some circuits require district courts to apply a two-step analysis to determine whether good cause exists for an extension to be granted. See Zapata, 502 F.3d at 197. However, the Second Circuit has determined that "whether such a bifurcated inquiry would be useful is a question best left to the district court[.]" Id.

20

Based upon a thorough review of the present record, there is no good cause for plaintiff's failure to identify and serve John Doe #1 and John Doe #2.  In commencing this action, Plaintiff expressly sought—and was granted—a <u>Valentin</u> Order to assist him in the identification of the two unknown defendants.  By letter dated February 7, 2019, Defendants' counsel provided identifying information regarding John Doe #2, but indicated that he was unable to ascertain the identity of John Doe #1 based upon the factual details proffered by Plaintiff in the Complaint.  <u>See</u> Dkt. No. 9.

In a Text Order dated March 1, 2019, Senior Judge Kahn stated:

> To the extent the [February 7, 2019 letter] allows Plaintiff to identify John Doe #2, Plaintiff shall, by April 1, 2019, prepare an amended complaint which substitutes the named defendant in place of John Doe #2. . . . Plaintiff is reminded that any proposed amended complaint must be a complete pleading, which, if accepted for filing, would replace the complaint in all respects.  In addition, the Court encourages Plaintiff to use the amended complaint as an opportunity to provide further detail regarding the identity of the defendant named as John Doe #1.  Should Plaintiff fail to submit a proposed amended complaint within the allotted time period, both John Doe #1 and John Doe #2 will be dismissed from this action without prejudice, without further order of the Court.

Dkt. No. 10 (internal quotation marks and citations omitted).  Despite seeking an extension, Plaintiff did not ultimately prepare and file a proposed amended pleading. Dkt. Nos. 12, 14.

Notwithstanding the fact that he was provided with the information that he expressly sought, Plaintiff failed to amend his complaint to identify John Doe #2. Plaintiff also did not attempt to amend his complaint to provide any additional factual regarding the identity of John Doe #1.  Plaintiff was expressly warned by Senior Judge Kahn that if he did not file a proposed Amended Complaint, those two defendants would

be "dismissed from this action without prejudice, [and] without further order of the Court." Dkt. No. 10.

Because John Doe #1 and John Doe #2 have not been served or otherwise appeared in the action in the appropriate 120-day time period—and because there is no good cause to justify plaintiff's failure to identify such defendants—it is respectfully recommended that the motion of John Doe #1 and John Doe #2 be granted and the Complaint must be dismissed against them without prejudice. See Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 709 F. Supp. 1279, 1282 (S.D.N.Y.1989).

### III. Conclusion

**WHEREFORE**, based upon the reasons outlined herein, it is hereby:

**RECOMMENDED**, that the motion to dismiss (Dkt. No. 22) be **GRANTED IN PART** and that Shawn Woods, John Doe #1, John Doe #2, and Deborah Shipman be **DISMISSED** from the action **WITH PREJUDICE**; and it is further

**RECOMMENDED** that the motion to dismiss (Dkt. No. 22) be **DENIED IN PART** and plaintiff's Eighth Amendment deliberate indifference claim against Geraldine Wilson and Elizabeth White proceed; and it is further

**ORDERED** that the Clerk of the Court is directed to amend the docket to reflect the full name of Elizabeth White; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[10]

Dated: July 23, 2020
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[10] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).