**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JAMEL UPSON,

                           Plaintiff,

           v.                                                    No. 9:18-CV-1149
                                                                 (LEK/CFH)
GERALDINE WILSON and
ELIZABETH WHITE,

                           Defendants.

_____

**APPEARANCES:**                          **OF COUNSEL:**

JAMEL UPSON
11-A-1855
Plaintiff, pro se
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

HON. LETITIA JAMES                      AMANDA K. KURYLUK, ESQ.
New York State Attorney General         Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

        Plaintiff pro se Jamel Upson ("Upson" or "Plaintiff"), who was, at all relevant times, in

the custody of the New York State Department of Corrections and Community Supervision

("DOCCS") at Upstate Correctional Facility ("Upstate C.F."), brings this action pursuant to

42 U.S.C. § 1983 against Defendants Nurse Geraldine Wilson ("Wilson") and Nurse

_____

        [1]  This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C.
§ 636(b) and N.D.N.Y.L.R. 72.3(c).

Elizabeth White ("White") for violations of his Eighth Amendment rights.  Dkt. No. 1

("Compl.").  Presently before the Court is Defendants' motion for summary judgment.  Dkt.

No. 59.  Upson opposed the motion, and Defendants replied.  Dkt. Nos. 67, 68 and 70.  For

the following reasons, it is recommended that Defendants' motion for summary judgment be

granted.

## I. BACKGROUND

### A. Facts[2]

In support of the motion, Defendants filed a Statement of Material Facts.[3]  Dkt. No. 59-

---

[2]  The parties provided exhibits with their submissions, without objection or challenges to the authenticity of any documents. Therefore, to the extent that the "facts" asserted by the parties are supported by the record, the undersigned will consider the facts and relevant exhibits/documents in the context of the within motion.  See Daniel v. Unum Provident Corp., 261 Fed. App'x 316, 319 (2d Cir. 2008) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party.").

[3]  Local Rule 56.1 (formerly L.R. 7.1(a)(3)) states:

Summary Judgment Procedure

(a) Statement of Material Facts: Any motion for summary judgment shall contain a separate Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.

The moving party shall also advise pro se litigants about the consequences of their failure to respond to a motion for summary judgment.  See also L.R. 56.2. For the recommended Notification of the Consequences of Failing to Respond to a Summary Judgment Motion, visit the District's webpage at Notification of Consequences.

(b) Response to Statement of Material Facts: The opposing party shall file a separate Response to the Statement of Material Facts. The opposing party response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert. In addition, the opposing party's Response may set forth any assertions that the opposing party contends are in dispute in a short and concise Statement of Additional Material Facts in Dispute,

1. Upson responded to the Statement of Material Facts.[4]  Dkt. No. 70 at pp. 12-16.[5]  The

facts recited are for the relevant time period as referenced in the Complaint and are related

herein in the light most favorable to Upson as the nonmoving party.  See subsection II(A)

infra.

In 2012 and 2013, while confined at Clinton Correctional Facility and Sing Sing

Correctional Facility, Upson was hospitalized on three separate occasions for treatment for

bowel obstructions.  Dkt. No. 59-5 at 19-27.  Defendants were not involved in that treatment

and were not employed at those facilities.  Id. at 19-27, 29.  From 2013 until April 30, 2015,

Plaintiff did not suffer from any bowel obstructions.  Id. at 28-29.

On April 30, 2015, Plaintiff was confined to a Special Housing Unit ("SHU") cell at

Upstate C.F.  Dkt. No. 59-5 at 13.  Plaintiff's cell door was solid, with a window.  Id. at 16.

Plaintiff was aware of the sick call procedures at Upstate C.F. and had requested sick call

prior to April 2015.  Id. at 15-17.

On April 30, 2015, before the 6:00 p.m. medical run, Upson told Corrections Officer

_____

containing separately numbered paragraphs, followed by a specific citation to the record where the fact is established. The moving party may reply to the opposing party's contended assertions in a separate Reply Statement and/or its Reply Memorandum of Law.

[4]  On September 29, 2021, Plaintiff asked the Court to dismiss/hold the summary judgment motion in abeyance because he was not provided with a copy of his deposition.  Dkt. No. 63.  The Court denied the request.  Dkt. No. 64.  In his response to the motion, Plaintiff reiterates his objection to Defendants' use of his deposition which, he alleges, "he never received a copy of, and was not allowed to make any correction to the answers[.]" Dkt. No. 70 at p. 7.  Because Plaintiff has not proffered evidence that he made a request to execute the transcript or to make specific changes to the transcript before the close of discovery or filing of the within motion, his objection lacks merit. See Thomas v. S.E.A.L. Sec., Inc., 301 Fed. App'x 32, 33 (2d Cir. 2008) (summary order) (holding that the magistrate judge did not err in relying upon an unsigned deposition because "a deposition need only be signed where a party so requests.") (citing Fed. R. Civ. P. 30(e)); see also Vlad-Berindan v. NYC Metro. Transportation Auth., No. 14-CV-10304, 2017 WL 9538168, at *26 (S.D.N.Y. Aug. 25, 2017), report and recommendation adopted, 2017 WL 4180022 (S.D.N.Y. Sept. 21, 2017), aff'd, 779 Fed. App'x 774 (2d Cir. 2019).

[5]  Citations to page numbers refer to the pagination generated by CM/ECF, not the page numbers generated by the parties.

Woods that he was suffering from excruciating stomach pain and vomiting and asked to see a nurse.  Dkt. No. 59-5 at 30; Dkt. No. 70-1 at 42 .  Approximately thirty minutes later, defendant Wilson responded to Plaintiff's cell.  Dkt. No. 59-5 at 31.  Wilson came to the door, yelled at Upson, and asked "what's wrong with you?  Id. at 32.  Wilson told Plaintiff, "I got stuff to do.  I have to do a medical run" and warned "this better be an emergency."  Id.  Wilson ordered Upson to turn on his cell light.  Id. at 34.  Upson admits he did not turn on his light and testified that he could not get off of his bed due to his abdominal pains however, he did not recall saying anything to Wilson in response to her request.  Dkt. No. 59-5 at 34.  Upson told Wilson to "calm down," and she "walked off."  Id.  at 32-33.  The entire encounter was thirty seconds long.[6]  Id. at 33.

At 7:20 p.m., in response to Plaintiff's "emergency sick call" request, Wilson asked an officer to escort Upson to the nurses' office for an evaluation.  Dkt. No. 59-2 at ¶ 12; Dkt. No. 59-5 at 37.  Plaintiff walked to the office, which was "downstairs" and "several feet" from his cell.  Dkt. No. 59-5 at 37-38.  During the evaluation, Wilson took Plaintiff's blood pressure, pulse, and temperature, asked about his symptoms, inquired about his bowel movements, and physically examined his abdomen.  Id. at 39-41.  At the conclusion of the examination, Wilson told Plaintiff not to eat anything that would upset his stomach and advised him to "show any vomit to the nursing staff."  Dkt. No. 59-1 at ¶¶ 25-26; Dkt. No. 70 at 14, ¶¶ 25-26.  Wilson also told Plaintiff to follow up with nursing staff through the sick call process, as needed.  Dkt. No. 59-1 at ¶ 27; Dkt. No. 70 at 14, ¶ 27.  Plaintif f did not ask

---

[6]  Wilson claims Upson was "laughing and joking and became argumentative[.]"  Dkt. No. 59-2 at ¶¶ 7-8.  As a result of Plaintiff's demeanor, Wilson did not believe that he was in any significant distress and terminated the sick call visit.  Id. at ¶ 8.

Wilson for any pain medication.  Dkt. No. 59-5 at 71-72.  Plaintiff walked back to his cell.[7]

Id. at 47; Dkt. No. 59-1 at ¶ 32; Dkt. No. 70 at 14 ¶ 32.

On May 1, 2015, at approximately 6:20 a.m., defendant White was performing a

medication and sick call round.  Dkt. No. 59-1 at ¶ 33; Dkt. No. 70 at p. 14, ¶ 33.  Plaintiff

did not submit a sick call request and thus, was not on the May 1, 2015, sick call list.  Dkt.

No. 59-5 at 51.  As White approached Plaintiff's cell, he stood up and "got [his] face on the

window" in an attempt to get her attention.  Id. at 52.  Upson told White he "had an

emergency" and had been vomiting.  Id. at 52-53.  White responded, "you didn't put a sick-

call slip in and it's not an emergency" and "kept going."  Id.  Plaintiff did not ask White for

any pain medication.  Dkt. No. 59-5 at 71-72.

On May 1, 2015, at 3:30 p.m., Plaintiff requested emergency sick call and was escorted

to the infirmary.  Dkt. No. 59-1 at 39; Dkt. No. 70 at p. 15, 39.  After a teleconference with a

doctor, Plaintiff was transported to an outside hospital for treatment for a bowel obstruction.

Dkt. No. 59-1 at 40, 43; Dkt. No. 70 at p. 15, 40, 43.

## B. Procedural History

In September 2018, Upson commenced the within action against Wilson, White,

Woods, and other defendants.  Dkt. No. 1.  Upon review of the Complaint, the Court found

that the Eighth Amendment deliberate medical indifference claims survived review and

required a response.  See Dkt. No. 6.  In lieu of filing an answer, Defendants moved to

dismiss the Complaint.  See Dkt. No. 22.  In a Memorandum-Decision and Order filed in

---

[7]  Wilson claims Plaintiff was "smiling, laughing, and joking during the evaluation" and did not appear
to be in any distress.  Dkt. No. 59-2 at ¶  21.  Wilson alleges Plaintiff needed no assistance climbing onto the
examination table, his abdomen was flat, and his vitals were normal.  Id. at ¶¶ 20-22.

September 2020, the Court dismissed the claims against Woods and other defendants, but denied the motion to dismiss the Eighth Amendment claims against Wilson and White.  See Dkt. No. 43.

On October 1, 2020, defendants filed an Answer.  Dkt. No. 44.  On October 2, 2020, the Court issued a Mandatory Pretrial Discovery and Scheduling Order directing the parties to complete discovery on or before April 2, 2021 and to file dispositive motions on or before June 2, 2021.  Dkt. No. 45 at 5-6.

In January 2021, Upson served a demand for documents including his medical records from September 2012 until April 2015.  Dkt. No. 70-1 at 50-51.  On February 23, 2021, counsel for Defendants responded and advised that requests were made for the documents and the documents would be mailed "no later than March 16, 2021."  Id. at 57.  On March 8, 2021, Plaintiff requested "the video/audio tapes of plaintiff examination and interaction with both Nurse Wilson and White."  Id. at 55.  On March 18, 2021, Defendants' counsel served a response to Plaintiff's request for documents and provided copies of his medical records from May 1, 2015, from Upstate C.F. and Alice Hyde Medical Center.  Dkt. No. 68-1 at 1-9, 38-55.  In response to Plaintiff's demand for complete medical records from September 2012 through April 2015, counsel responded, "defendants are still in the process of obtaining plaintiff's full medical record.  Once obtained, it will be produced to plaintiff under a Supplemental Disclosure."  Id. at 3.

On March 26, 2021, Upson appeared at a deposition.  Dkt. No. 59-5.  On June 1, 2021, the Court issued an order extending the dispositive motion deadline until September 2, 2021.  Dkt. No. 53.  On August 18, 2021, the Court granted Defendants' request for an extension of time to file dispositive motions until September 16, 2021.  Dkt. No. 57.  On

6

September 16, 2021, Defendants filed the within motion pursuant to Fed. R. Civ. P. 56 seeking summary judgment and dismissal of all claims against Wilson and White.  See generally Dkt. No. 59.  Upson opposed the motion.  Dkt. No. 70.

## II.  DISCUSSION[8]

Upson contends Defendants were deliberately indifferent to his medical needs in violation of his Eighth Amendment rights.  See generally Compl.  Defendants argue they are entitled to judgment, as a matter of law, because Upson cannot establish that defendants were deliberately indifferent to his serious medical needs.  See generally Dkt. No. 59.

## A.  Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion.  FED. R. CIV. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 317, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing a genuine issue for trial.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  For a

---

[8] Unpublished decisions cited within this Report-Recommendation have been provided to Plaintiff.

court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party.  Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . .  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law.

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

### B.  Deliberate Medical Indifference Claims

The Eighth Amendment forbids the infliction of "cruel and unusual punishments" on those convicted of crimes, "which includes punishments that involve the unnecessary and wanton infliction of pain."  U.S. CONST. AMEND. VIII; Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  An Eighth

8

Amendment claim for medical indifference, has two necessary components, one objective and the other subjective.  See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  The objective component requires the plaintiff to demonstrate that his alleged medical need is "sufficiently serious."  Hathaway, 37 F.3d at 66.  Here, Defendants do not contest the objective element of Plaintiff's Eighth Amendment claim.  See generally Dkt. No. 59.

The subjective component requires a showing that the defendant has acted with a "sufficiently culpable state of mind."  Hathaway, 37 F.3d at 66.  A prison official acts with a sufficiently culpable state of mind when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1970).  "Deliberate indifference is a mental state equivalent to subjective recklessness" which "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."  Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006) (quotation marks omitted).  A defendant "may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was 'insubstantial or non-existent.' "  Wright v. Genovese, 694 F.Supp.2d 137, 154 (N.D.N.Y. 2010) (citing Farmer, 511 U.S. at 844).  Therefore, "the defendant's belief that his conduct posed no risk of serious harm need not be sound so long as it is sincere, and even if objectively unreasonable, a defendant's mental state may be nonculpable."  Id. at 154-155 (quoting Salahuddin, 467 F.3d at 281) (internal quotation marks omitted).

### 1.  Defendant Wilson

The undisputed record reveals that Wilson asked an officer to escort Upson to the

nurses' office for an evaluation in response to his emergency sick call request.  Dkt. No. 59-2 at ¶ 12; Dkt. No. 59-5 at 37.  Upson told Wilson he had been vomiting.  Id. at 44.  During the evaluation, Wilson took Plaintiff's blood pressure, pulse, and temperature.  Id. at 39-40.  Wilson asked about Plaintiff's symptoms and inquired about his bowel movements.  Id.  Wilson asked Plaintiff to lay down for a physical examination.  Dkt. No. 59-5 at 39-41.  Using her fingertips and a stethoscope, Wilson examined Plaintiff's stomach area.  Id.  As Wilson touched Plaintiff's abdomen, Wilson asked Upson to describe where he was feeling pain and asked about his bowel movements.  Id. at 42, 45.  At the conclusion of the examination, Wilson told Plaintiff not to eat anything that would upset his stomach and advised him to "show any vomit to the nursing staff."  Dkt. No. 59-1 at ¶¶ 25-26; Dkt. No. 70 at 14 ¶¶ 25-26.  Wilson also told Plaintiff to follow up with nursing staff through the sick call process, as needed.  Dkt. No. 59-1 at ¶ 27; Dkt. No. 70 at 14 ¶ 27.  Plaintiff walked back to his cell and had no further interaction with Wilson.  Id. at 47; Dkt. No. 59-1 at ¶ 32; Dkt. No. 70 at 14 ¶ 32.

Upson claims Wilson was "unprofessional, dismissive and uncaring," failed to provide medication, and failed to review his medical records.  Dkt. No. 70 at 5-6.  Even assuming that Upson's allegations are true, based upon the record, no reasonable juror could conclude that Wilson acted with deliberate indifference.  "Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking."  Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011) (citation omitted).  First, although Wilson was dismissive and displayed a lack of empathy toward Plaintiff, the undisputed facts demonstrate that she conducted a complete physical examination of Upson, listened to his complaints, and provided him with guidance on how to proceed if his

10

symptoms did not improve.  These facts and do not support the conclusion that Wilson

acted with culpable intent.  See Brown v. White, No. 9:08-CV-200 (GLS/ATB), 2010 WL

985184, at *11 (N.D.N.Y. Mar. 15, 2010) (finding that the plaintiff's allegations that the

defendant "was completely dismissive of his complaints" to be insufficient to support his

claim that she acted with deliberate indifference where the defendant completed a physical

examination, found the plaintiff's vital signs were normal, and concluded that he was not in

distress).  Indeed, a lack of empathy "arguably [. . .] permits the inference" that Wilson

"genuinely believed" that Plaintiff's health was not at risk); Melvin v. Cty. of Westchester,

No. 14-CV-2995, 2019 WL 1227903, at *11 (S.D.N.Y. Mar. 15, 2019) (citing McClinton v.

Connolly, No. 13-CV-2375, 2014 WL 5020593, at *5 (S.D.N.Y. Oct. 8, 2014)) ("If the

officers believed Plaintiff's asthma attack was a mere ruse, they could not have been aware

of a substantial risk that Plaintiff would suffer serious harm.").

Second, Wilson's failure to provide medication does not establish that Wilson deviated

from the standard medical treatment plan or that she "acted with a culpable state of mind in

making this decision."  Upson admitted that he did not ask Wilson for any medication,

including Tylenol or Ibuprofen.  Dkt. No. 59-5 at 70-72.  Indeed, Upson concedes that it

"wasn't even on [his] mind to ask" for Tylenol or Ibuprofen because "it wasn't going to do

anything for me."  Id.  The Eighth Amendment does not afford prisoners a right to medical

treatment of their choosing, and prison medical personnel are vested with broad discretion

to determine what method of care and treatment to provide to their patients.  See Estelle,

429 U.S. at 107 (finding that "the question whether an X-ray or additional diagnostic

techniques or forms of treatment is indicated is a classic example of a matter for medical

judgment" and does not give rise to a constitutional); see Vargas v. State of New York Dep't

of Corr. Services, No. 93 CIV. 7337, 1996 WL 631722, at *4 (S.D.N.Y. Oct. 31, 1996)

(holding that a medical decision not to prescribe certain medications does not represent

cruel and unusual punishment, but at most rises to a claim for medical malpractice). This

claim, at most, amounts to a disagreement with Wilson's medical judgment, and does not

give rise to an Eighth Amendment claim. Veloz v. New York, 339 F.Supp. 2d 505, 525

(S.D.N.Y. 2004) (concluding that the plaintiff's contention that the defendant denied him

pain medication amounted to a disagreement with a medical provider over a treatment plan,

and does not implicate the Eighth Amendment).

    Third, with respect to the review of his medical records, Upson fails to establish that

Wilson acted intentionally. Upson concedes that Wilson was not aware of, or involved with,

his prior treatment or hospitalization for bowel obstructions and admits he had no

complaints or treatment related to bowel obstructions for two years prior to April 2015.

Therefore, even assuming Wilson failed to review Plaintiff's medical records, Upson has

failed to proffer evidence that her failure was due to anything other than a lack of care. See

Holmes v. Fell, 856 F.Supp. 181, 183 (S.D.N.Y. 1994) (finding that the plaintiff failed to

establish that the defendant intentionally failed to review his medical history where he

admits he never told the defendant of his prior positive test results); see also Griffin v.

Capra, No. 18-CV-10405, 2021 WL 1226428, at *6 (S.D.N.Y. Mar. 31, 2021) (holding that

the failure to review medical records "amounts to nothing more than that [the defendant]

acted negligently or that [the p]laintiff disagrees with [the defendant's] treatment"). At best,

Plaintiff's allegations relate to negligence and malpractice, which are not actionable under

section 1983. See Morales v. New York State Dep't of Corrs., 842 F.2d 27, 30 (2d Cir.

1988); see also Hathaway, 99 F.3d at 553.

To the extent that Plaintiff's opposition papers could be construed to include an argument related to a delay in treatment, the argument lacks merit.  Plaintiff testified that Wilson initially "waved [him] off" and walked away from his first emergency sick call request, see Dkt. No. 59-5 at 33, but that Wilson examined him approximately one hour later.  To establish deliberate indifference from a delay in treatment, a plaintiff must show some measurable harm that resulted from the alleged delay in order to present a triable issue of fact, and he has failed to do so.  See Colon v. Plescia, No. 9:07-CV-0727 (DNH/DEP), 2009 WL 2882944, at *8-9 (N.D.N.Y. July 27, 2009) (granting summary judgment on the plaintiff's deliberate indifference claim where the plaintiff failed to show substantial harm resulting from a delay in treatment).

Finally, in an attempt to create an issue of fact, Upson provides an affidavit and claims he "showed [Wilson] the vomit" and made Wilson aware of his "prior issues with bowel obstructions."  See Dkt. No. 70 at 18 ¶ 6.  However, these assertions are contradicted by his deposition testimony.  During his deposition, Plaintiff was asked about his first encounter with Wilson, and, specifically, if he could "recall any of the conversation between the two of you?"  Dkt. No. 59-5 at 32-33.  Plaintiff responded that he "tr[ied] to tell her what's wrong with me, but she was just still going and then walked off."  Id.  Upson admitted that the only thing he said to Wilson was "calm down."  Id. at 33.  Later during his oral examination, Plaintiff was asked about his second interaction with Wilson.  Id. at 39-43.  Plaintiff testified he told Wilson he was vomiting and suffering from "excruciating" abdominal pain.  Dkt. No. 59-5 at 44.  Plaintiff did not testify that he "showed" his vomit to Wilson or that he ever discussed his prior history with bowel obstructions with Wilson, at any time.  Thus, Plaintiff's proffer of new facts in opposition to summary judgment is insufficient to defeat the present

13

motion. See Guarino v. St. John Fisher College, 553 F.Supp. 2d 252, 259 (W.D.N.Y. 2008) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.") (internal quotation marks and citations omitted) aff'd 321 F. App'x 55 (2d Cir. 2009) (summary order).

Based upon a review of the record, the undersigned concludes that Upson has failed to raise a material question of fact regarding Wilson's culpable state of mind. Accordingly, the undersigned recommends granting Defendants' motion for summary judgment on this ground.

## 2. Defendant White

Upson alleges White was deliberately indifferent because she responded to his emergency sick call request by directing him to submit a sick call slip. Dkt. No. 70 at p. 25. Upson testified he told White he had an "emergency" and "mentioned that [he] had been throwing up all [ ] night." Dkt. No. 59-5 at 53. Even assuming Upson communicated that he felt as though he was having an emergency and vomiting, the mere fact that Upson made this statement does not suffice to prove that these conditions actually existed. Upson does not proffer evidence demonstrating that he was suffering from visible distress when he spoke with White at his cell. See Dkt. No. 70 at p. 25, ¶¶ 26-27. There is no evidence to indicate that White knew of and disregarded an "excessive risk to his health" under the second prong. Farmer, 511 U.S. at 837.

Upson also contends that White acted with culpable intent because she failed to follow

14

the DOCCS Health Care Services Policy, No. 1.34, Section II(A)(7).[9]  Dkt. No. 70 at 7.

However, White's failure to "adhere strictly to state or institutional policy" is "not sufficient to

establish a constitutional violation."  H'Shaka v. O'Gorman, 444 F.Supp. 3d 355, 373

(N.D.N.Y. 2020); see Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (noting that a

violation of a state procedural statute alone, without a due process violation, "would not be

enough generally to establish a constitutional claim"); Sanders v. Gifford, 9:11-CV-0326

(LEK/RFT), 2014 WL 5662775, at *4 (N.D.N.Y. Nov. 4, 2014) ("[E]ven assuming that [the

d]efendant . . . deviated from state procedures or DOCCS Directives, a violation of such

rules and regulations does not, standing alone give rise to liability under § 1983."); Ahlers v.

Nowicki, 9:12-CV-0539 (DNH/RFT), 2014 WL 1056935, at *4 (N.D.N.Y. Mar. 18, 2014)

("[C]laims involving the improper adherence to proprietary facility policies are incognizable

under § 1983; only rights secured by the Constitution and federal law are actionable under

§ 1983.").

Moreover, White's acknowledgment of Plaintiff's request for immediate medical

attention and direction to submit a sick call slip, does not equate to a delay in access to

medical care or complete denial of medical treatment.  Upson spoke with White at

approximately 6:20 a.m. and admits he was seen at sick call "about three-ish" the same

day, taken to the infirmary, and received treatment.  Dkt. No. 59-1 at ¶¶ 33, 39; Dkt. No. 70

at 14, ¶¶ 33, 39; Dkt. No. 59-5 at 54.  An eight and a half hour delay of medical treatment

---

[9]  DOCCS' Health Care Services Policy No. 1.34 (Sick Call), Section II(A)(7), provides:

Each facility must develop a sick call process and ensure that: [a]ll inmates requesting unscheduled sick call will be evaluated in person by a qualified health care professional and addressed appropriately.

Dkt. No. 70-1 at 59.

does not constitute deliberate indifference.  See Allen v. Ford, 880 F.Supp. 2d 407, 411

(W.D.N.Y.2012) (finding no medical indifference where the inmate plaintiff's request for

emergency sick call was denied but the inmate was seen at sick call, pursuant to an

appointment, the following day).  Further, Upson does not demonstrate that this delay was

intentional.  Estelle, 429 U.S. at 104-05 (holding that, to demonstrate deliberate

indifference, a plaintiff must show that defendant intentionally delayed medical care or

infringed access to prescribed treatment).  Upson testified about his interaction with White:

> Q.  Okay. So at that -- at that time she didn't -- there was no
> interaction between the two of you in terms of these are my
> symptoms, these are, you know, the pain that I'm going
> through, this is the history of what just happened to me. It was
> just, you reached out, you said your -- you needed to be seen,
> and her saying she's in the middle of  something and that was
> it?
>
> A.  To my recollection, I -- yeah, I would say that 'cause I don't
> -- I don't remember me seeing exac -- all of that stuff.  I was
> just like I have an emergency. I had also mentioned that I had
> been throwing up all -- all night, what can it be, but she just
> kept walking.

Dkt. No. 59-5 at 52-53.

Because Upson admits that White did not examine him, and further, that he did not

discuss his symptoms with her, Upson has failed to prove that White intentionally delayed

his access to "medical care at a time when he was in extreme pain" and made his medical

problems known White or that he was completely denied medical treatment.  See Smith v.

Outlaw, No. 15-CV-0061, 2017 WL 4417699, at *3 (S.D.N.Y. Sept. 30, 2017) (citation

omitted).

Therefore, Upson has failed to raise a material question of fact whether White knew of

and disregarded an excessive risk to his health or safety.  Accordingly, Upson has not

demonstrated that White was deliberately indifferent to a serious medical condition, and it is recommended that Defendants' motion on this ground be granted.

### C.  Prematurity of Summary Judgment Motion

Upson urges the Court to deny Defendants' motion for summary judgment as premature due to outstanding discovery.  See Dkt. No. 70 at 7.  Specifically, Upson claims Defendants failed to disclose Plaintiff's medical records or "audio/video tapes" which would support his claims.  Id.

Fed. R. Civ. P. 56(d) permits the Court to, among other things, delay consideration of a summary judgment motion and reopen discovery if a "nonmovant," such as plaintiff, "shows by affidavit . . . that, for specified reasons, [he] cannot present facts essential to justify its opposition."  FED. R. CIV. P. 56(d).  The Second Circuit "has established a four-part test for [assessing] the sufficiency of [the] affidavit": the "affidavit must include [1] the nature of the uncompleted discovery; [2] how the facts sought are reasonably expected to create a genuine issue of material fact; [3] what efforts the affiant has made to obtain those facts; and [4] why those efforts were unsuccessful."  Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994).  "Even if the declaration satisfies the four requirements, this Court may deny a request for 'cumulative' or 'speculative' discovery materials, or a request based solely on 'bare, generalized assertions.'"  Desrameaux v. Delta Air Lines Inc., No. 2:15-CV-347, 2018 WL 1224100, at *6 (E.D.N.Y. Mar. 8, 2018) (quoting Alphonse Hotel Corp. v. Tran, 828 F.3d 146,151-52 (2d Cir. 2016)).  The decision whether grant relief pursuant to Rule 56(d) is within the discretion of the district court.  See Crye Precision LLC v. Duro Textiles, LLC, 689 F. App'x 104, 106 (2d Cir. 2017) (summary order) (citing

Alphonse Hotel Corp., 828 F.3d at 151).

Although Plaintiff filed an affidavit attempting to comply with Fed. R. Civ. P. 56(d), that affidavit fails to show his entitlement to the requested relief.  First, the affidavit is completely devoid of any reference to his request for medical records.  In his memorandum of law in opposition to the motion, Plaintiff states that defendants refuse to disclose his medical records.  See Dkt. No. 70 at 7.  "[A] bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f)[.]"  Gumbs v. Dynan, No. 11-CV-857, 2012 WL 3705009, at *17 (E.D.N.Y. Aug. 26, 2012) (denying the plaintiff's Rule 56 application that "plaintiff has not been given his medical records" as insufficient to justify denying the motion for summary judgment).

Moreover, insofar as Plaintiff avers that medical records pre-dating April 2015 are relevant to establish his medical indifference claims, as discussed above, even taking Plaintiff's allegations as true, his claims lack merit.  See subsection II(B), supra.  Upson concedes that Wilson and White were not involved in his prior treatment for bowel obstructions and further, that he did not make Wilson or White aware of his prior treatment. Additionally, Upson admits he had not had any issues with bowel obstructions since 2013, two years prior to the incidents relevant to this action.  Thus, Plaintiff has failed to establish the relevance of any medical records pre-dating April 2015.

Similarly, with respect to audio or video footage, Upson states, in a conclusory manner, that the information is necessary to adequately oppose Defendants' motion.  Dkt. No. 70 at 20, ¶ 21.  Even assuming such footage exists, Upson has not explained how this material would create an issue of fact.  As discussed supra, taking Plaintiff's version of the events

18

that transpired during his interactions with Wilson and White as true, summary judgment is

still appropriate.  Therefore, any footage would not raise a genuine issue of fact in

connection with his claims.  Plaintiff's claim that audio or video surveillance would assist him

in establishing Eighth Amendment violations is nothing more than speculation and

insufficient to oppose a motion for summary judgment.  See, e.g., Davis v. Corr. Corp. of

Am., No. CV-13-1174, 2015 WL 13741880, at *18 (W.D. Okla. Oct. 2, 2015), report and

recommendation adopted, 2016 WL 325154 (W.D. Okla. Jan. 27, 2016), dismissed, 868

F.3d 885 (10th Cir. 2017) (rejecting the plaintiff's contention that video evidence was

necessary to oppose summary judgment because the court found that "[the p]laintiff's

fully-credited version of events is insufficient to establish an Eighth Amendment violation").

Moreover, Plaintiff has had ample time to obtain the aforementioned discovery.  In

March 2021, after his deposition was completed, Upson did not seek judicial intervention or

request an extension of time to conduct discovery.  In May 2021, Plaintiff filed a motion to

amend his complaint to add new defendants to the action.  Dkt. No. 49.  Notably absent

from the motion was any mention of discovery, the need for a discovery conference, or a

request from Plaintiff to direct Defendants to provide outstanding discovery.

The Court notes that in response to Plaintiff's Rule 56(d) request, Defendants contend

they responded to Plaintiff's discovery demands and allege Plaintiff's FOIL requests for

audio/video tapes were denied because Plaintiff failed to remit payment for copies.  See

Dkt. No. 67 at 6-8.  Defendants' reply lacks any explanation regarding their failure to

supplement their discovery responses with the medical records, as promised, or a

statement regarding Defendants' failure to provide any response to Plaintiff's demand for

video and/or audio tapes.[10]  Although the Court certainly does not condone Defendants'
conduct, Plaintiff has failed to explain how the aforementioned information would be
relevant to the Eighth Amendment claims at hand.  See, e.g., Evans v. Lopez, No. 98 C
2077, 2000 WL 631357, at *3 (N.D. Ill. May 12, 2000) (holding that "justice is [not] furthered
by denying [the] defendants' summary judgment motion as a penalty" for failing to timely
respond to the plaintiff's demands).

As discussed in detail above, Defendants have established that Plaintiff received
adequate medical care and that Plaintiff's claims against Defendants amount to, at most,
disagreement with the course of his medical treatment - an insufficient basis to establish an
Eighth Amendment claim.  See subsection II(B) supra.  Therefore, the undersigned
concludes that the disclosure of additional medical records and audio/video surveillance
does not raise any question of fact with respect to Plaintiff's meritless Eighth Amendment
medical indifference claims.  For these reasons, the Court finds no merit to Upson's
argument that summary judgment is premature due to outstanding discovery.

## IV.  CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that Defendants' motion for summary judgment (Dkt. No. 59) be
**GRANTED**; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the
parties in accordance with the Local Rules.

---

[10]  In Defendants' response to Plaintiff's request for documents, counsel acknowledged the obligation
to forward Plaintiff's medical records under "Supplemental Disclosure," see Dkt. No. 68-1 at 3, and, during
Plaintiff's deposition, counsel advised "we still haven't gotten your medical."  Dkt. No. 59-5 at 38.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days (14) within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[11]

Dated: March 11, 2022
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[11] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(c).