**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JAMEL UPSON,

               Plaintiff,

         -v-                            9:18-CV-1149 (AJB/PJE)

GERALDINE WILSON,

               Defendant.
_____

**Hon. Anthony Brindisi, U.S. District Judge:**

<u>**ORDER on MOTIONS *IN LIMINE***</u>

## I.      INTRODUCTION

Seven years ago, Jamel Upson ("plaintiff") filed this Section 1983 action asserting claims against several nurses and corrections officers (collectively, "defendants") for violations of his Eighth Amendment rights.  Dkt. No. 1.  Broadly, plaintiff alleged that defendants were deliberately indifferent to his serious medical needs while he was incarcerated at Upstate Correctional Facility ("Upstate") in 2015.  *Id.*  After several rounds of motion practice, Nurse Geraldine Wilson ("defendant") is the sole remaining defendant.  Dkt. No. 93.

This case is set for a jury trial beginning on Tuesday, October 14, 2025, at 9:00 a.m. in Utica, New York.  Presently before the Court are the parties' pre-trial motions *in limine*, Dkt. Nos. 124, 127, 140, which have been fully briefed.  Dkt. Nos. 134, 146.  The Court heard argument from the parties at the final pretrial conference on October 7, 2025.

## II.    LEGAL STANDARD

A motion *in limine*'s purpose is to streamline the trial with rulings about the forecasted evidence's admissibility or anticipated arguments' permissibility.  *See, e.g.*, *Luce v. United States*, 469 U.S. 3, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (reducing interruptions); *United States v. Wagner*, 651 F. Supp. 3d 594, 598 n.1 (N.D.N.Y. 2023) (applying to arguments).

"Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *Walker v. Schult*, 365 F. Supp. 3d 266, 275 (N.D.N.Y. 2019) (citation omitted).  "The movant has the burden of establishing that the evidence is not admissible for any purpose."  *Id*.  "The trial judge may reserve judgment on a motion *in limine* until trial to ensure the motion is considered in the proper factual context."  *Id*.  Finally, "[t]he court's ruling regarding a motion *in limine* is subject to change when the case unfolds."  *Id*.

## III.    DISCUSSION

### A.    Criminal Convictions

Under Rule 609(a)(1)(A), felony convictions must be admitted to impeach a witness's character for truthfulness unless the probative value of the conviction evidence is substantially outweighed by the danger of unfair prejudice.  Fed. R. Evid. 609(a)(1)(A); Fed. R. Evid. 403.

In weighing "probative value against prejudicial effect . . . courts examine: '(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness.'"  *Coleman v. Durkin*, 585 F. Supp. 3d 208, 213 (N.D.N.Y. 2022) (quoting *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997)).  Though all factors are relevant, "[p]rime among them is whether the crime, by its nature, is probative of a lack of veracity."  *U.S. v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977).

Rule 609(a)(1)(A) presumptively allows "inquiry into the 'essential facts' of the conviction, including the nature or statutory name of each offense, its date, and the sentence imposed, *U.S. v. Estrada*, 430 F.3d 606, 616 (2d Cir. 2005), but the district court has "wide discretion to impose limitations on the cross-examination of witnesses," *U.S. v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002).

For instance, courts have excluded evidence of the statutory name of an offense and the length of the sentence imposed. *See U.S. v. Brown*, 606 F. Supp. 2d 306 (E.D.N.Y. 2009); *see, e.g.*, *Hines v. Huff*, 2019 WL 3574246, at *2 (N.D.N.Y. Aug. 6, 2019) (precluding reference to statutory name of offense and sentence imposed); *Ridge v. Davis*, 639 F. Supp. 3d 465, 475 (S.D.N.Y. 2022) (same).

### 1. Plaintiff's Criminal Convictions (Def's MIL #1 & Pl.'s MIL #1A)

Defendant seeks to impeach plaintiff by inquiring into the essential facts of his criminal convictions, including the names and dates of the offenses, and the sentences imposed. Dkt. No. 124 at 5–6. Plaintiff concedes that evidence of his felony convictions is admissible pursuant to Rule 609(a)(1)(A), but urges the Court to preclude defendant from inquiring into the statutory names and the sentences imposed. Dkt. No. 127 at 4–6.

"Plaintiff has two convictions for attempted murder in the second degree and two convictions for criminal possession of a weapon in the second degree." Dkt. No. 127 (Pl.'s Mem.) at 3; *see also* Dkt. No. 124 at 6. Plaintiff was convicted of one count of attempted murder and two counts of criminal possession of a weapon on December 10, 2010, and one additional count of attempted murder on November 14, 2013. Dkt. No. 124 at 6. Plaintiff is serving a twenty-two (22) year term of imprisonment based on these convictions. Dkt. No. 124 at 6.

Because plaintiff remains incarcerated on these convictions, the essential facts of the convictions are presumptively admissible under Rule 609(a)(1)(A), unless the Court determines,

upon consideration of the relevant factors, "that the probative value of that evidence 'is substantially outweighed by the danger of unfair prejudice . . . '" *See Estrada*, 430 F.3d at 620–21 (quoting Fed. R. Evid. 403).

The first two factors (*i.e.*, impeachment value and remoteness) weigh against admission. Plaintiff's convictions are for violent offenses that "have little or no direct bearing on honesty and veracity." *Estrada*, 430 F.3d at 617. And, at twelve and fifteen years old, respectively, plaintiff's convictions are fairly remote. *See U.S. v. Vasquez*, 840 F. Supp. 2d 564, 570 (E.D.N.Y. 2011) (finding that six-, eight-, and twelve-year-old convictions had "diminished probative value").

Conversely, the third and fourth factors weigh in favor of admission. The third factor concerns the similarity of the crimes of conviction and the conduct at issue. *Coleman*, 585 F. Supp. 3d at 213. This factor weighs in favor of admission because plaintiff's convictions do not concern conduct similar to that at issue here. The fourth factor—importance of the credibility of the witness—also militates in favor of admission, because plaintiff's credibility is a central issue in this case.

In sum, the Court finds that evidence of plaintiff's convictions should be admitted for impeachment purposes, but limited in the following ways to avoid the danger of unfair prejudice.

First, the Court agrees with plaintiff that defendant should be precluded from referencing the statutory names of his convictions. Plaintiff's convictions for attempted murder and criminal possession of a weapon—both violent felonies—are minimally probative of his veracity, but create a significant danger of unfair prejudice. *See Diggs v. Guynup*, 621 F. Supp. 3d 315, 320 (N.D.N.Y. 2022) (Sannes, J.) (finding probative value of statutory names of "[p]laintiff's

convictions for attempted murder and weapons possession . . . substantially outweighed by the danger of unfair prejudice").

Second, for similar reasons, defendant should be precluded from inquiring into the sentences imposed for plaintiff's convictions.  As plaintiff points out, "[b]y the nature of this case, the jury will know that [p]laintiff has been incarcerated on one or more felony convictions since at least 2012."  Dkt. No. 127 at 6.  Additional inquiry into the length of plaintiff's overall sentence adds little to no probative value, but "creates a danger of unfair prejudice[,] because the jury might infer from its length that [p]laintiff committed a serious violent crime, and unfairly decide this case."  *Hines*, 2019 WL 3574246, at *2.

Ultimately, although plaintiff's credibility is a central issue in this case, neither the statutory names of his convictions nor the sentences imposed carry any probative value as to his credibility, but both present a significant danger of unfair prejudice.

Accordingly, plaintiff's motion to exclude evidence of the statutory names of his criminal convictions and the sentences imposed is GRANTED, and defendant may refer only to the fact that plaintiff has been incarcerated on one or more felonies since at least 2012.  Defendant's cross-motion is DENIED with respect to any other details of the conviction.

### 2.  Incarcerated Nonparty Witness Alexander Screahben's Criminal Convictions (Def.'s MIL #2A & Pl.'s MIL #1B)

Defendant seeks to impeach incarcerated non-party witness Alexander Screahben by inquiring about his three felony convictions.  Dkt. No. 124 at 9.  Plaintiff argues that defendant should be precluded from referencing the statutory names of Screahben's convictions, the number of convictions, and the maximum sentence of imprisonment Screahben faces for those convictions.  Dkt. No. 134 at 4.

Screahben was convicted of two counts of robbery in the first degree in 2004, and he pled guilty to assault in the second degree in 2013. Dkt. No. 124 at 9. Screahben is currently serving a twenty-seven-year sentence. *Id.*

Because Screahben remains incarcerated on these convictions, the essential facts of the convictions are presumptively admissible under Rule 609(a)(1)(A), unless the Court determines, upon consideration of the relevant factors, "that the probative value of that evidence 'is substantially outweighed by the danger of unfair prejudice . . . '" *See Estrada*, 430 F.3d at 620–21 (quoting Fed. R. Evid. 403).

The first two factors (*i.e.*, impeachment value and remoteness) weigh against admission. Although robbery is a theft crime, and theft crimes "bear on a witness's propensity to testify truthfully," *Estrada*, 430 F.3d at 621, "[robbery] requires the use of force and has 'more of the characteristics of a crime of violence,' which has less probative value on credibility," *Diggs*, 621 F. Supp. 3d at 321 (quoting *U.S. v. Crumble*, 2018 WL 2016852, at *7–*8 (E.D.N.Y. May 1, 2018)). The remoteness of Screahben's robbery convictions (*i.e.*, twenty-one years) further diminishes their probative value. *See Brown v. Cornell*, 2021 WL 2711511, at *4 (N.D.N.Y. July 1, 2021) (D'Agostino, J.) ("Plaintiff's robbery conviction is approximately ten-years old; this factor diminishes the probative value of Plaintiff's convictions.") (internal quotation omitted). Screahben's 2013 assault conviction, as a relatively remote conviction for a violent offense, similarly lacks probative value..

The third and fourth factors, again, weigh in favor of admission. The third factor, which concerns the similarity between the past crime and the conduct at issue, weighs in favor of admission, because, as plaintiff points out, "Screahben's crimes of conviction do not bear any similarity to any conduct at issue in this lawsuit." Dkt. No. 127 at 4. The fourth factor, too,

-6-

weighs in favor of admission because, like plaintiff, Screahben's credibility is an important issue in this case.

Taken together, the Court finds that evidence of Screahben's convictions should be admitted, but limited in the following ways so as to avoid the danger of unfair prejudice.

First, the Court agrees with plaintiff that defendant should be precluded from referencing, or offering evidence of the statutory names of Screahben's convictions.[1]  As violent offenses, Screahben's crimes of conviction are "not particularly probative as to honesty and veracity." *Ash v. Johnston*, 2021 WL 2826426, at *2 (N.D.N.Y. July 7, 2021).

Second, the Court finds that defendant should also be precluded from referencing both the number of convictions for which Screahben is incarcerated, and the maximum sentence Screahben faces.  At Screahben's *de bene esse* deposition, conducted on September 8, 2025, defendant elicited the following testimony:

> Q: Okay, Now, previously you had been asked, with regard to your felonies – is it correct that you are currently incarcerated with three felonies?
>
> A.  Yes, sir.
>
> Q. Okay. Okay. And are you currently serving a maximum sentence of 27 years? . . .
>
> A. Yes, sir.

Tr. of the Dep. of Alexander Screahben ("Screahben Dep.") at 18:22–19:6.

Any probative value of the number of convictions for which Screahben is incarcerated, or the sentence imposed for Screahben's convictions is negligible, because the jury will be aware that Screahben has been incarcerated on one or more felonies since at least 2015, when the

---

[1] Although defendant argues that this issue is moot because the statutory names of Screahben's convictions were not elicited at his *de bene esse* deposition, defendant has expressed an intent to offer "Crime and Sentencing Information for Alexander Screahben" as a defense exhibit.  *See* Dkt. No. 117 at 2.

subject incident occurred.  *See* Screahben Dep. 9:10–10:7; *see also Diggs*, 621 F. Supp. 3d 315, 321 (N.D.N.Y. 2022) ("[A]ny incremental probative value of impeachment with all three robbery convictions would be substantially outweighed by a danger of unfair prejudice.").

Accordingly, plaintiff's motion to exclude evidence of the statutory names of Alexander Screahben's criminal convictions, the number of those convictions, and the sentence imposed for those convictions is GRANTED.  Defendant's cross-motion is DENIED with respect to any other details of the convictions.

### 3.    Related Exhibits (Pl.'s MIL #2)

Plaintiff has moved to preclude admission of Defendant's Exhibit 1, which is described as "Plaintiff's crime and sentencing information," and Defendant's Exhibit 14, which is described as "Crime and Sentencing Information for Alexander Screahben."  Dkt. No. 127 at 5. Defendant has not opposed.

Because defendant is precluded from referencing the statutory names of plaintiff's and Screahben's convictions and the sentences imposed for those convictions, *supra* Points A.1–2, Defendant's Exhibits 1 and 14 must also be excluded.

Accordingly, plaintiff's motion to exclude Defendant's Exhibit 1 ("Plaintiff's crime and sentencing information") and Defendant's Exhibit 14 ("Crime and Sentencing Information for Alexander Screahben") is GRANTED.

### B.    Disciplinary History of Alexander Screahben (Def.'s MIL #2B & Pl.'s MIL #3)

Defendant seeks to attack Screahben's character for truthfulness by introducing evidence of his prison disciplinary history.  Dkt. No. 124 at 9–10.  Plaintiff argues that the specific disciplinary infraction at issue lacks probative value.  Dkt. No. 134 at 5.

"Rule 608(b) states that the court may, on cross-examination of a witness, allow inquiry as to specific instances of conduct, 'if they are probative of the character for truthfulness or

untruthfulness of . . . the witness, or another witness whose character the witness being cross-examined has testified about.'" *Tapp v. Tougas*, 2018 WL 1918605, at *3 (N.D.N.Y. Apr. 20, 2018) (quoting Fed. R. Evid. 608(b)).

In 2016, Screahben pleaded guilty to a disciplinary charge of false information.  Dkt. No. 124-6 at 4–5.  "While a disciplinary conviction for false information may relate to a witness's credibility, the Court must consider whether the specific incident has probative value regarding the witness's credibility." *Jeanty v. Cerminaro*, 2021 WL 2778572, at *6 (N.D.N.Y. July 2, 2021).

According to prison records, while Screahben was incarcerated at Auburn Correctional Facility on January 13, 2016, a corrections officer instructed him to clean, he refused the order and told the officer that he had not yet eaten at the mess hall, but, according to another corrections officer, Screahben had already been to the mess hall.  Dkt. No. 124-6 at 5.

The Court finds that the specific conduct underlying Screahben's disciplinary charge for false information has minimal probative value, warranting exclusion of those portions of Screahben's deposition testimony that refer to his disciplinary history.  *See* Screahben Dep. at 22:14–25:4.

Further, because Rule 608(b) prohibits the introduction of extrinsic evidence of specific instances of conduct to attack a witness's character for truthfulness, Fed. R. Evid. 608(b), defendant is also precluded from offering Defendant's Exhibit 15, which is described as "Disciplinary History for Alexander Schraeben," and Defendant's Exhibit 16, which is described as "Screahben hearing packet for false info charge" at trial.

Accordingly, plaintiff's motion to exclude testimony and evidence relating to Screahben's disciplinary history is GRANTED, and defendant's cross-motion to admit such

evidence is DENIED.  Defendant is precluded from offering Defendant's Exhibit 15,

Defendant's Exhibit 16, and any portion of Screahben's testimony relating to his disciplinary

history, *see* Screahben Dep. at 22:14–25:4, at trial.

> **C.    Objections to Screahben's Deposition Designations**

In light of the foregoing, the Court rules on the parties' objections to Screahben's

proposed testimony as follows:

> 12:12–13:10:  The objection is overruled.  The witness's response was permissible
> lay opinion testimony under Fed. R. Evid. 701.

> 18:22–19:4:  The objection is sustained.  Defendant may not refer to the number of
> convictions Screahben is incarcerated on or the maximum sentence faced for those
> convictions.  *See supra* Point A.2.

> 23:6–8:   The objection is sustained.   Defendant may not refer to Screahben's
> disciplinary history.  *See supra* Point B.

> 24:24–25:4:  The objection is sustained.  *Id.*

> **D.    References to Previously Dismissed Claims (Def.'s MIL #3)**

Defendant seeks to preclude the admission of any evidence pertaining to claims

previously dismissed in this action.  Dkt. No. 124 at 11.  Plaintiff represents that he does not

intend to reference the previously dismissed claims themselves, but notes that "many facts which

are relevant and admissible with respect to the remaining Eighth Amendment claim against

[defendant] would be facts 'pertaining' or 'relating' to his previously dismissed claims."  Dkt.

No. 134 at 6.

The Court agrees with defendant that "evidence relating *solely* to previously dismissed

claims is irrelevant to the issues remaining for trial and is therefore inadmissible."  *Diggs*, 621 F.

Supp. 3d at 325–26 (emphasis added).

Accordingly, defendant's motion is GRANTED, in part, to the extent that plaintiff seeks

to refer to the dismissed claims themselves or admit evidence relating solely to dismissed parties

or claims, but DENIED to the extent that such evidence relates directly to plaintiff's remaining claim against defendant and the issue of damages.

### E.    References to Indemnification (Def.'s MIL #5)

Defendant seeks to preclude plaintiff from referencing the fact or possibility that defendant may be indemnified by the State of New York.  Dkt. No. 124 at 12.  Plaintiff has represented that he does not intend to do so.  Dkt. No. 134 at 7.

Accordingly, this motion is DENIED as moot, without prejudice to renew at trial, if necessary.

### F.    References to a Specific Dollar Amount in Summation (Def.'s MIL #6)

Defendant seeks to preclude plaintiff from referencing a specific dollar amount of compensatory or punitive damages during summation.  Dkt. No. 124 at 13–14.  Plaintiff has represented that he does not intend to do so.  Dkt. No. 134 at 7.

Accordingly, this motion is DENIED as moot, without prejudice to renew at trial, if necessary.

### G.    Plaintiff's Other Lawsuits (Pl.'s MIL #4)

Plaintiff has moved to preclude reference to two other lawsuits to which he is a party. Dkt. No. 127 at 8.  Defendant have not opposed this motion.

Accordingly, plaintiff's motion is GRANTED, and defendant is precluded from making reference to, or offering evidence of, any other civil suits to which plaintiff is a party.

### H.    Civilian Clothing & Restraints (Pl.'s MIL #5)

Plaintiff requests that he be allowed to wear civilian clothing and remain unrestrained during trial while in the presence of the jury.  Dkt. No. 127 at 8.  Defendant takes no position as to either request.

Some courts in this district have granted similar requests in their entirety, *Brisman v. Volpe*, 2018 WL 3691236, at *4 (N.D.N.Y. Aug. 3, 2018); *Outman v. Waldron*, 2016 WL 4435234, at *3 (N.D.N.Y. Aug. 19, 2016), while others have granted as to civilian clothing, but reserved on the issue of restraints until after consultation with the law enforcement officials transporting plaintiff on the morning of trial, *Ash v. Johnston*, 2021 WL 2826426, at *5 (N.D.N.Y. July 7, 2021); *Shepherd v. Smith*, No. 2019 WL 5212883, at *1 n.1 (N.D.N.Y. Oct. 16, 2019).

Plaintiff's request to wear civilian clothing during trial is GRANTED. The Court will reserve ruling on the issue of restraints until the morning of trial.

## I.    Expert Testimony

### 1.    Dr. Gupta (Def.'s MIL #4)

Defendant seeks to preclude plaintiff from presenting or eliciting expert testimony from Dr. Rahul Gupta, who treated plaintiff at Alice Hyde Medical Center ("Alice Hyde"). Dkt. No. 124 at 11. Plaintiff has represented that he does not intend to elicit any expert opinion from Dr. Gupta as to either issue. Dkt. No. 134 at 7.

Accordingly, this motion is DENIED as moot, without prejudice to renew at trial, if necessary.

### 2.    Dr. Schroyer (Pl.'s Supp. MIL)

Plaintiff has moved to exclude certain testimony of non-party witness Dr. Glen Schroyer, who briefly treated plaintiff at Upstate. Dkt. No. 140. In opposition, defendant argues that plaintiff waived any objections not raised at Dr. Schroyer's *de bene esse* deposition and, regardless, Dr. Schroyer's opinion testimony was "consistent with that of a treating physician and . . . should not be precluded." Dkt. No. 146 at 5.

### i. Timeliness

As a threshold matter, defendant contends that plaintiff's motion should be denied because it was filed without leave and after the Court's September 15, 2025, deadline for motions in *limine*. Dkt. No. 146 at 1. Though defendant is technically correct, her reasoning is flawed.

Dr. Schroyer's deposition was not conducted until September 17, 2025—two days after the Court's deadline—and plaintiff largely objects to Dr. Schroyer's testimony on the ground that defendant improperly elicited expert opinions from Dr. Schroyer, who was disclosed only as a fact witness. *See generally*, Dkt. No. 140. The Court rejects the proposition that plaintiff was required to forecast defendant's intent to elicit expert opinion testimony from a non-expert treating physician witness, in violation of the Rule 26 of the Federal Rules of Civil Procedure.

Moreover, the trial order also states that:

> Not less than **four weeks** prior to the trial date, each party shall indicate to the opposing party the portion of any video deposition to be offered . . . In the case of a dispute, counsel shall forward . . . the **disputed** portions of any deposition transcript (including transcripts of any videotaped depositions) intended to be used at trial at least <u>**one week**</u> before the Final Pre-Trial Conference.

Dkt. No. 104 at 4. (emphasis in original).

Because Dr. Schroyer's deposition was not conducted until September 17, 2025, defendant could not possibly have indicated the portions of Dr. Schroyer's testimony she intended to offer at trial within the prescribed time frame (*i.e.*, at least four weeks prior to trial). Still, plaintiff managed to submit his objections to those designations one week before the final pre-trial conference, in compliance with the trial order. Dkt. No. 140.

Accordingly, the Court declines to deny plaintiff's motion on timeliness grounds.

### ii. Waiver

Defendant also argues that plaintiff waived any objections not raised at Dr. Schroyer's deposition, because the deposition was taken *de bene esse*.  Dkt. No. 146 at 2–4.

A *de bene esse* deposition, also known as a deposition taken "in anticipation of future need," is used to preserve the trial testimony of a witness who will likely be unavailable to testify at trial.  Black's Law Dictionary (12th ed. 2024).  In that regard, testimony given *de bene esse* is typically treated in the same manner as testimony offered live at trial.  *See Manley v. AmBase Corp.*, 337 F.3d 237, 248 (2d Cir. 2003) (acknowledging "district court's directive that . . . *de bene esse* deposition 'substitut[e] for trial testimony'"); *George v. Ford Motor Co.*, 2007 WL 2398806, at *12 (S.D.N.Y. Aug. 17, 2007) (Lynch, J.) ("Such a deposition . . . is a substitute for live testimony at trial.").

Defendant argues that, because Dr. Schroyer's *de bene esse* deposition was taken with the understanding that it would serve as Dr. Schroyer's trial testimony, plaintiff waived any objections not raised at Dr. Schroyer's deposition.  Dkt. No. 146 at 2.  Although the Court appreciates, and, in some sense agrees, with the premise of defendant's argument, it overlooks a number of procedural missteps that militate against applying such a rigid approach in this case.

First and foremost, the parties entered the "usual stipulations" at the beginning of Dr. Schroyer's deposition—ostensibly agreeing to reserve all rights under New York Civil Practice Law and Rules in the process.[2]  *See* Dkt. No. 140-1 ("Schroyer Dep.") at 5:2–8:10.  Among those rights reserved was the right to object.  Specifically, the parties stipulated that "the failure to object to any question or to move to strike testimony at this examination shall not be a bar or

---

[2] The parties' "usual stipulations" invoke the New York Civil Practice Law and Rules, which, of course, do not govern this federal action.  Nevertheless, the Court construes the stipulations agreed to by the parties according to their substance: That the failure to object to a question or move to strike testimony during the deposition does not waive any such objection, which remains reserved for trial.

waiver to make such motion at, and is reserved for[,] the trial of this action." *Id.* Accordingly, plaintiff has reserved his "right to object to any question, except as to form, or to move to strike any testimony." Schroyer Dep. at 5:8–9.

At the final pre-trial conference, defense counsel argued that the stipulation was erroneously entered into—seemingly insinuating that the court reporter mistakenly assumed that the deposition was a discovery deposition, rather than a deposition to be used at trial.[3]

Even assuming, *arguendo*, that the stipulation was somehow invalid, plaintiff has not waived his objections to Dr. Schroyer's testimony under the applicable Federal Rules. Federal Rule of Civil Procedure ("Rule") 32 governs the use of depositions in court proceedings, generally. *See* Fed. R. Civ. P. 32. "By its terms, [Rule 32] draws no distinction between depositions taken for purposes of discovery and those taken for use at trial." *Manley*, 337 F.3d at 247. Put differently, there is no separate procedural rule for *de bene esse* depositions.[4]

Accordingly, the Court looks to Rule 32 to determine whether plaintiff has waived his objections to Dr. Schroyer's testimony. Rule 32(b) provides that:

> (b) Subject to . . . subdivision (d)(3) of this rule, objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying . . .

---

[3] Even if true, defense counsel offers no explanation as to why he assented to the terms of the stipulation.

[4] This was not always the case. Before the Federal Rules of Civil Procedure were enacted, early federal judicial statutes provided for "depositions *de bene esse*." In 1937, when the Federal Rules of Civil Procedure were first adopted, Rule 26 "incorporate[d], modif[ied], and broaden[ed] the provisions for depositions under U.S.C., Title 28, [former] §§ 639 (Depositions *de bene esse;* when and where taken; notice), 640 (Same; mode of taking), 641 (Same; transmission to court)." Fed. R. Civ. P. 26 advisory committee's note to 1937 adoption.

After a rearrangement of discovery rules in 1970, the sections of Rule 26 that embodied historical *de bene esse* deposition rules landed in Rule 32, *see* Fed. R. Civ. P. 32 advisory committee's note to 1970 amendment, further suggesting that, in the absence of a standalone *de bene esse* procedural rule, Rule 32 governs.

Fed. R. Civ. P. 32.  Under subdivision (d)(3) of Rule 32:

> (d)(3)(A) Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time; [and]

> (d)(3)(B) [e]rrors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties, and errors of any kind which might be obviated, removed, or cured if promptly presented are waived unless seasonable objection thereto is made at the taking of the deposition.

Fed. R. Civ. P. 32.  "Rule 32(d)(3) distinguishes between objections of substance going to the admissibility of the testimony taken and formal objections to the form of the questions."  8A *Wright & Miller's Federal Practice and Procedure* § 2156 (3d ed.).

Here, plaintiff's objection to the disputed portions of Dr. Schroyer's testimony is primarily that "Dr. Schroyer exceeded the permissible scope of a treating physician's testimony and offered improper expert testimony and opinions."  Dkt. No. 140 at 2.  Because plaintiff's objection is one of substance, going to the admissibility of Dr. Schroyer's testimony and implicating the sufficiency of defendant's disclosures, it could not have been obviated at the time, and, thus, has not been waived. [5]

### iii. Improper Expert Testimony

Turning to the merits of plaintiff's motion, plaintiff argues that Dr. Schroyer, who was disclosed only as a fact witness, offered improper expert opinion testimony that went beyond

---

[5] Although this is the outcome demanded by the Federal Rules of Civil Procedure and the equities in this case, Rule 32 is hardly one size fits all.  *De bene esse* depositions should likely be governed by a separate rule, as they are distinguishable from discovery depositions in both form and function.  While parties may offer discovery deposition testimony at trial for impeachment, or where a witness has become unavailable to testify at trial, *de bene esse* depositions are intended to be conducted *as if* the witness were on the stand at trial.

This distinction is important.  It means that a *de bene esse* deposition is shown in full to the jury, and counsel must put all objections on the record *during* the *de bene esse* deposition, in the same way they would if the testimony was being given live at trial.  Neither of these aspects of *de bene esse* depositions are reflected in Rule 32.

opinions he formed during his treatment of plaintiff.  Dkt. No. 140 at 1.  Defendant maintains

that "Dr. Schroyer is *not* being offered as an *expert* witness" and insists that Dr. Schroyer

"provided testimony consistent with the guidelines set forth in *Rosales v. LaValley* as a treating

physician."  Dkt. No. 146 (citing *Rosales v. LaValley* 2014 WL 3477620 (N.D.N.Y. July 11,

2014)) (emphasis in original).

"The law in the Second Circuit is clear that treating physicians and other medical

professionals can testify as to their opinions without being disclosed as expert witnesses."

*Rosales*, 2014 WL 3477620, at *3.  "That is not to say, however, that the physician's testimony

is without parameters."  *Id.*  "The key to what a treating physician can testify to without being

declared an expert is based on his personal knowledge from consultation, examination and

treatment of the [p]laintiff, not from information acquired from outside sources."  *Id.* (internal

citations omitted).

Put differently, a treating physician "does not . . . need to be disclosed as an expert if he

is testifying 'solely as to that information the physician acquired through observation during

treatment and limited to the facts obtained during treatment.'"  *Goss v. Sealift Inc.,* 2024 WL

670405, at *19 (E.D.N.Y. Jan. 17, 2024) (quoting *Rodriguez v. Vill. of Port Chester*, 535 F.

Supp. 3d 202, 214 (S.D.N.Y. 2021)).

Under this standard, Dr. Schroyer is limited to testifying about opinions he formed *during*

his treatment of plaintiff in 2015, which, as plaintiff points out, was extremely limited.  Indeed,

Dr. Schroyer's nominal involvement in plaintiff's treatment can be distilled down to three

"interactions."

First, on May 1, 2015, a nurse from Upstate made a phone call to Dr. Schroyer, who was

the on-call physician at the time, and, together, they decided to send plaintiff to the Upstate

infirmary. Schroyer Dep. at 29:3–7, 30:3–5. Later that evening, plaintiff saw a different physician via telemedicine, and that physician decided to transfer plaintiff to Alice Hyde, a nearby hospital, where he remained until he was discharged back to the Upstate infirmary on May 6, 2015. Schroyer Dep. at 42:15–22. Defendant does not contend that Dr. Schroyer had any involvement in the decision to transfer plaintiff to Alice Hyde, or the care plaintiff received while at Alice Hyde. Dkt. No. 146 at 4.

Second, on May 7, 2015, Dr. Schroyer reviewed a discharge plan from Alice Hyde, examined plaintiff, and discharged him from the Upstate infirmary back to the cell block. Schroyer Dep. at 44:5–17, 65:22–66:20.

Third, on May 8, 2015, Dr. Schroyer was present during a telemedicine appointment between plaintiff and Dr. Rahul Gupta, the physician who treated plaintiff at Alice Hyde. Schroyer Dep. at 56:17–57:6.

Despite defendant's contentions, Dr. Schroyer's testimony went far beyond knowledge obtained and opinions formed during *his* treatment of plaintiff. Indeed, Dr. Schroyer testified with regard to a plethora of plaintiff's records neither prepared, nor reviewed, by him during the course of his treatment of plaintiff in 2015. *See, e.g.*, Schroyer Dep. at 40:11–41:6 (opining as to records of telemedicine visit with other physician who saw plaintiff *after* Dr. Schroyer's phone call with Nurse Shipman); 42:15–25 (same); 43:10–13 (same); 45:20–23 (testifying as to opinion formed by treating physician at outside hospital); 48:22–50:5 (opining as to plaintiff's treatment at outside hospital based on records from that hospital); 57:23–58:24 (offering opinion testimony as to treatment received from nurses other than Nurse Shipman).

Although the rules allow treating physicians to offer expert opinions formed during treatment, "they do not provide a testimonial blank check." *Kaganovich . McDonough*, 546 F.

Supp. 3d 248, 274 (E.D.N.Y. 2021).  For example, courts in this circuit have routinely held that a "treating physician may not introduce information provided by other physicians to whom the [p]laintiff may have been referred[,] nor may the doctor present any medical reports received from other physicians regarding the [p]laintiff or opine on any information provided by another doctor." *Spencer v. Intl. Shoppes, Inc.*, 2011 WL 4383046, at *4 (E.D.N.Y. Sept. 20, 2011); *see also Rodriguez*, 535 F. Supp. 3d at 216 (precluding testimony from treating physician that "expressly addresses [another physician]'s report, or the opinions of any other physicians"); *Motta v. First Unum Life Ins. Co.*, 2011 WL 4374544, at *4 (E.D.N.Y. Sept. 19, 2011) (precluding non-expert treating physician from testifying "with regard to another physician's records, opinion or recommendations" because "this information cannot be characterized as being within [his] personal knowledge").

Defendant failed to elicit any testimony suggesting that Dr. Schroyer had personal knowledge of several records he opined about at his deposition.  At the final pre-trial conference, defense counsel made a late-breaking argument that Nurse Shipman's testimony at trial will establish that Dr. Schroyer's opinions were based on knowledge he obtained during plaintiff's treatment in 2015.

But, even assuming that Nurse Shipman *could* testify as to what information Dr. Schroyer was purportedly aware of during her phone call with him in 2015, it is defendant's April 30, 2015, treatment of plaintiff at issue in this case, and Dr. Schroyer's own testimony makes clear that he had no personal knowledge of such treatment:

> Q. Now, you also discussed Nurse Wilson's progress notes from April 30th, 2015, the day before. You have no personal knowledge of Mr. Upson's interactions with Nurse Wilson on April 30th, 2015, correct?
>
> A. Correct.

Q. And again, you didn't personally see or evaluate Mr. Upson on April 30th, 2015, right?

A. Correct.

Schroyer Dep. at 62:4–12.

Lastly, the Court rejects defendant's contention that limiting Dr. Schroyer's testimony to opinions formed during his treatment of plaintiff would be "extremely prejudicial."

As the Second Circuit has repeatedly acknowledged, district courts are afforded a wide latitude "both in determining whether evidence is admissible, *Meloff v. New York Life Ins. Co.,* 240 F.3d 138, 148 (2d Cir. 2001), and in controlling 'the mode and order' of its presentation to promote the effective ascertainment of the truth, Fed. R. Evid. 611(a)." *Manley*, 337 F.3d at 247.

The exclusion of improper portions of Dr. Schroyer's testimony is a consequence of defendant's own (in)actions. "If [d]efendant wanted to elicit testimony regarding the treatment decisions made by others . . . she was free to notice their depositions or request a *de bene esse* deposition." Dkt. No. 140 at 4. Similarly, to the extent defendant wanted Dr. Schroyer to testify regarding the quality of care provided by others, she was free to disclose him as an expert witness. It is not plaintiff's responsibility to anticipate or take preemptive measures to deter defendant's attempts to circumvent established rules of procedure.

Accordingly, and in light of the foregoing, the Court rules on plaintiff's objections to Dr. Schroyer's proposed testimony as follows:

26:2–8: The objection is overruled. The witness's answer was based on his knowledge and within the scope of his treatment of plaintiff.

29:8–21: The objection is overruled. The witness had sufficient knowledge to give the answer. He spoke with Nurse Shipman regarding her observations of plaintiff.

29:22–30:11: The objection is overruled. Same.

30:22–31:24: The objection is sustained. The witness cannot opine outside the scope of his treatment of plaintiff and may not offer retrospectively formed opinions.

31:25–32:10: The objection is sustained.  Same.

32:11–21:  The objection is sustained.  The witness's answer was speculative.

33:3–37:14:  The objection(s) are sustained.  The witness cannot opine outside the scope of his treatment of plaintiff and may not offer retrospectively formed opinions.

40:11–41:6:  The objection is sustained.  Same.

41:17–24:  The objection is sustained.  Same.

42:15–25:  The objection is sustained.  The witness's answer was speculative.

43:10–13:  The objection is sustained.  The witness may not offer retrospectively formed opinions.

45:20–23:  The objection is sustained.  Same.

46:5–9:  The objection is sustained.  Same.

46:16–18:  The objection is sustained.  The witness cannot opine outside the scope of his treatment of plaintiff and may not offer retrospectively formed opinions.

47:5–48:3:  The objection is sustained.  Same.

48:22–49:5:  The objection is sustained.  Same.

56:8–13:  The objection is sustained.  Same.

56:8–57:22:  The objection is overruled.  The witness has sufficient knowledge to give the answer.  Either he or physician's assistants working under his supervision reviewed the discharge plan (Defendant's Exh. 8, p. 1).

57:23–58:24:  The objection is sustained.  The witness may not offer retrospectively formed opinions.

## IV.    CONCLUSION

Beyond the issues previously discussed, the Court notes that if a party opens the door on direct examination for testimony that this order would otherwise preclude, cross-examination as to that issue will be permitted.

Therefore, it is

ORDERED that

1. Defendant's motions *in limine* (Dkt. No. 124) are GRANTED in part and DENIED in part; and

2. Plaintiff's motions *in limine* (Dkt. Nos. 127 & 140) are GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

Dated: October 9, 2025

Utica, New York

Anthony J. Brindisi
U.S. District Judge